

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-6-2006

# McKee v. Hart

Precedential or Non-Precedential: Precedential

Docket No. 04-1442

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"McKee v. Hart" (2006). *2006 Decisions*. Paper 1684.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1684

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1442

DWIGHT L. MCKEE;
ALLEN L. JONES

v.

HENRY HART;
WESLEY RISH;
ALBERT MASLAND;
JAMES SHEEHAN;
DANIEL P. SATTELLE

Daniel P. Sattele,
Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 02-cv-01910)
District Judge: Honorable Richard Caputo

Argued March 10, 2005

Before: SCIRICA, <u>Chief Judge</u>, ROTH and
AMBRO, <u>Circuit Judges</u>

(Opinion filed: January 6, 2006)

Charles W. Rubendall, II, Esquire (Argued)
Donald M. Lewis, III, Esquire
Keefer, Wood, Allen & Rahal, LLP
210 Walnut Street
P.O. Box 11963
Harrisburg, PA 17108-1963

      Counsel for Appellant

Donald A. Bailey, Esquire (Argued)
Bailey Stretton & Ostrowski
4311 North 6th Street
Harrisburg, PA 17110

      Counsel for Appellee

## OPINION OF THE COURT

AMBRO, <u>Circuit Judge</u>

Daniel Sattele appeals the District Court's denial of his summary judgment motion seeking qualified immunity in a suit brought by Allen Jones alleging that Sattele, among others, had

retaliated against him for exercising his First Amendment rights. Because Jones did not allege that Sattele deprived him of a constitutional right—and because even if he had, that right was not clearly established at the time Sattele engaged in the alleged conduct—we conclude that Sattele is entitled to qualified immunity. We therefore reverse the decision of the District Court and remand for further proceedings.

## I. Factual and Procedural History

In May 2002, Jones was hired as a special investigator for the Pennsylvania Office of Inspector General ("OIG").[1] The OIG is responsible for investigating allegations of fraud, waste, misconduct, and abuse in executive agencies of the Commonwealth. At the time of the events at issue in this case, Sattele was an Investigations Manager at OIG and was Jones's supervisor.

In mid- to late-July 2002, Jones was given a lead role in the investigation of Steve Fiorello, the chief pharmacist at Harrisburg State Hospital. There was only one other person assigned to the investigation. A few weeks after the investigation began, Jones told Sattele that he was concerned about problems in the pharmaceutical industry that went beyond the Fiorello investigation—specifically that he believed the

---

[1]Jones had previously been employed by OIG. He left that position in 1991.

industry was routinely bribing state officials. Jones informed Sattele that he wanted to broaden the Fiorello investigation to include the entire pharmaceutical industry. Thereafter, Jones continued to inform Sattele about his concerns regarding the industry.

In response, Sattele told Jones to stay focused on the Fiorello investigation and not to investigate corruption in the pharmaceutical industry as a whole. Sattele subsequently removed Jones from his lead role in the Fiorello investigation in September 2002[2] because Jones had, in Sattele's words, "lost focus." Sattele based this conclusion on the fact that Jones continued to voice concerns about the entire pharmaceutical industry even after Sattele had told him to concentrate only on Fiorello.

In October 2002, Dwight McKee, one of Jones's colleagues at OIG, filed a complaint against other OIG employees, alleging that they had retaliated against him for exercising his First Amendment rights. In November 2002, an amended complaint was filed, joining Jones as a plaintiff and Sattele as a defendant. Jones brought a cause of action under 42 U.S.C. § 1983, alleging that Sattele and the other defendants had also retaliated against him for exercising his First Amendment rights. Jones claimed generally that he was retaliated

---

[2]Jones was still assigned to that investigation even though his role had changed.

4

against—through intimidation and harassment by his supervisors—for complaining to his supervisors that public corruption investigations were being obstructed and delayed for reasons that were not legitimate.

In particular, at his deposition Jones identified three comments by Sattele that he perceived as harassment in retaliation for his refusal to stop voicing his concerns about the pharmaceutical industry.[3] First, he testified that Sattele told him that

> Mac [McKee] was torpedoed. Some of the things that he got maybe he deserved, but a lot of them he didn't. He was torpedoed. You keep your mouth shut . . . . Mac has been torpedoed, keep your mouth shut or the same thing can happen to you.

In a similar vein, Jones recalled that Sattele told him, in early October 2002, that if Jones could not adjust to the way OIG operated, he would have to leave his employment there.

---

[3]Jones also identified a fourth incident that he alleged was harassment, involving Henry Hart, another defendant. Hart, however, is not a party to this appeal, and as that incident is not relevant to our decision, we do not discuss it here.

Second, Jones testified that Sattele told him to "quit being a salmon," by which he meant that Jones should "quit swimming against the current with the pharmaceutical case." (Sattele testified at his deposition that he told Jones to "go with the flow" and not "swim against the current" because he was concerned that Jones was not working with the lawyers in the office and was not operating within a "team concept.")

Third, Jones related an incident that occurred in October 2002, after he had been removed as co-leader of the Fiorello investigation. Jones stated that thereafter he was not allowed to speak to anyone about the investigation without Sattele's permission. He nevertheless went to pick up documents from Fiorello, the target of the investigation, while Sattele and another of his supervisors were out of the office. Jones testified that, when he got back, Sattele met him "first thing," took him into a room with another OIG colleague, "and demanded to know why [he] went . . . without [Sattele's] permission to pick up papers." Jones also stated that Sattele and his colleague accused Jones of having had an interview with the Director of the Department of Public Welfare, something Jones denied.

All defendants moved for summary judgment in August 2003, and the District Court granted the motion with respect to all defendants except Sattele in February 2004. As for Jones's claims against Sattele, the District Court determined, based on the three comments identified by Jones, that (1) "with respect to Mr. Sattele, Mr. Jones has presented evidence that could lead a

6

reasonable jury to conclude that his requests to investigate the pharmaceutical industry were a substantial or motivating factor in the retaliatory harassment or intimidation he may have suffered" and (2) it could not decide whether Sattele had qualified immunity absent a factual determination as to whether Sattele's conduct constituted retaliatory harassment. In its decision, the District Court also determined that Jones was not disciplined in connection with voicing his concerns about the pharmaceutical industry and that "[a]t no time during his employment has Mr. Jones's job classification, pay, or benefits been reduced or altered." Sattele now appeals from the denial of summary judgment on qualified immunity grounds.

## II. Jurisdiction & Standard of Review

The District Court had federal question jurisdiction over Jones's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *See Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004) ("[A] denial of qualified immunity that turns on an issue of law—rather than a factual dispute—falls within the collateral order doctrine that treats certain decisions as 'final' within the meaning of 28 U.S.C. § 1291." (citing, *inter alia*, *Behrens v. Pelletier*, 516 U.S. 299 (1996))); *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 147 (3d Cir. 2002) ("When a defendant moves for summary judgment based on qualified immunity, the denial of the motion may be appealed immediately under the collateral-order doctrine because '[t]he

7

entitlement is an *immunity from suit* rather than a mere defense to liability[] and . . . is effectively lost if a case is erroneously permitted to go to trial.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (alterations, emphasis, and omission in original)).[4]

We exercise plenary review over the District Court's conclusions of law in its qualified immunity analysis. *Doe*, 361 F.3d at 237. In addition, "we may review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Forbes*, 313 F.3d at 147 (internal quotation marks omitted).

We note also that at this stage of the litigation we are looking at the facts as presented by Jones, *i.e.*, Satelle's statements were retaliatory, rather than the exercise by Satelle of appropriate supervisory limits on Jones's performance of his assignment.

---

[4]Sattele contends that there is no factual dispute preventing us from exercising jurisdiction over this appeal, and Jones does not dispute that position.

### III. Discussion

Qualified immunity insulates government officials performing discretionary functions from suit "insofar as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* at 148 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). To determine whether an official has lost his or her qualified immunity, we must first "decide 'whether a constitutional right would have been violated on the facts alleged . . . .'" *Doe*, 361 F.3d at 237 (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)) (omission in original). If the answer to that question is "yes," we must then "consider whether the right was 'clearly established.'" *Id.* at 238 (quoting *Saucier*, 533 U.S. at 201)). If we also answer "yes" to the second question, we must conclude that the official does not have qualified immunity.

Sattele contends that he is entitled to qualified immunity because (1) his three statements to Jones about his work on the Fiorello investigation did not deprive Jones of his First Amendment rights, and (2) even if Jones did allege a violation of a constitutional right, that right was not clearly established at the time Sattele made the comments. We address each argument in turn.

    A.     *Did Sattelle Violate a Constitutional Right of Jones?*

9

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) (internal quotation marks omitted). In light of this fundamental principle, we have held that, in certain circumstances, a public employee may bring a cause of action alleging that his or her First Amendment rights were violated by retaliatory harassment for the employee's speech about a matter of public concern even if he or she cannot prove that the alleged retaliation adversely affected the terms of his or her employment. *See Suppan v. Dadonna*, 203 F.3d 228, 234–35 (3d Cir. 2000). In *Suppan*, we indicated that when the "plaintiffs' complaint allege[d] a campaign of retaliatory harassment culminating in . . . retaliatory rankings [low ratings on promotion lists]," then a "trier of fact could determine that a violation of the First Amendment occurred at the time of the rankings on the promotion lists and that some relief [was] appropriate even if plaintiffs [could not] prove a causal connection between the rankings and the failure to promote." *Id.* This holding is premised on the idea that being the victim of petty harassments in the workplace as a result of speaking on matters of public concern is in itself retaliation—even if the employee cannot prove a change in the actual terms of his or her employment—and thus could be actionable under the First Amendment. *Id.* at 235.

In this context, the key question in determining whether a cognizable First Amendment claim has been stated is whether "the alleged retaliatory conduct was sufficient to deter a person

10

of ordinary firmness from exercising his First Amendment rights . . . ." *Id.* at 235 (internal quotation marks omitted). The effect of the alleged conduct on the employee's freedom of speech "'need not be great in order to be actionable,'" but it must be more than *de minimis*. *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) (Posner, J.)); *see also Brennan*, 350 F.3d at 422 n.17 (noting that "incidents of what might otherwise be trivial 'harassment'" may be actionable through their "cumulative impact . . . even though the actions would be *de minimis* if considered in isolation"). As stated earlier, the District Court determined that Jones's allegation that Sattele retaliated against him for speaking out about the pharmaceutical industry met the standards set out in *Suppan*.

Sattele does not dispute the District Court's conclusion that Jones sufficiently alleged that he was speaking out on a matter of public concern. Sattele does argue, however, that the District Court's conclusion (by pointing to the three statements Sattele made to Jones, the latter alleged a retaliatory harassment claim under the First Amendment) was incorrect. In particular, Sattele contends that his three allegedly retaliatory comments were trivial and insufficient to deter a person of ordinary firmness from exercising his First Amendment rights. We agree.

Despite our holding in *Suppan* that a plaintiff's allegation of a "campaign of retaliatory harassment" by a public employer as a result of the plaintiff's speech created a cognizable First

11

Amendment claim even without an alleged causal connection to a change in the plaintiff's terms of employment, not every critical comment—or series of comments—made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (stating that "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation"); *Bart*, 677 F.2d at 625 (holding that plaintiff had alleged an actionable First Amendment claim when she claimed that "an entire campaign of harassment[,] which though trivial in detail may have been substantial in gross," had been mounted against her, but cautioning that "[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise"). We have noted that "'courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.'" *Brennan*, 350 F.3d at 419 (quoting *Suarez*, 202 F.3d at 686) (holding that allegations that a supervisor stopped using the plaintiff's job title and did not capitalize the plaintiff's name as a result of plaintiff's speech, even if true, did not rise to the level of a constitutional violation because they were *de minimis*). The comments made by Sattele fall into this category.

12

Sattele's statements to Jones in the fall of 2002 were all aimed at getting Jones to focus on the investigation to which he was assigned —looking into the activities of a particular person in a particular state agency—instead of focusing on Jones's own wide-ranging concerns about the pharmaceutical industry as a whole, something that OIG was not investigating. There is no question Sattele's statements were critical of Jones's job performance, and they may be construed as reprimands for Jones's continued expressions of concern about potential corruption in the pharmaceutical industry. However, even looking at the record in the light most favorable to Jones (as we must at this stage in the proceedings), we cannot conclude that Sattele's comments, taken together, would have deterred a person of ordinary firmness from exercising his First Amendment rights.

In *Suppan*, the plaintiffs allegedly were subjected to repeated chastisements and threats from their superiors over a period of more than a year based on their membership in a union negotiating team, and they alleged that they were given low ratings on their promotion eligibility evaluations in retaliation for those activities. 203 F.3d at 230–31. By contrast, Jones was admonished a few times for straying from the scope of the task he was assigned. The District Court explicitly found that, despite Jones's changed role in the Fiorello investigation, he suffered no alteration in his employment benefits, pay, or job classification as a result of speaking out about potential corruption in the pharmaceutical industry. Based on the set of

13

facts identified by the District Court, Jones's allegations about Sattele's conduct simply do not rise to the level of a retaliatory harassment claim under the First Amendment.

Because Jones has not alleged the deprivation of a constitutional right, Sattele is entitled to qualified immunity. For the sake of completeness however, we now turn to the second prong of the qualified immunity analysis and determine whether—assuming that Jones had sufficiently alleged the violation of a constitutional right—that right was clearly established at the time of Sattele's alleged conduct.

B.    *Assuming Sattele Violated a Constitutional Right of Jones, Was that Right Clearly Established at the Time of the Alleged Conduct?*

"'[C]learly established rights' are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001). Put another way, "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Id.* at 572. The Supreme Court has recently reiterated this point, stating that "[i]t is important to emphasize that this [clearly established] inquiry 'must be undertaken *in light of the specific context of the case*, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct.

14

596, 599 (2004) (*per curiam*) (quoting *Saucier*, 533 U.S. at 201) (emphasis added).

Before Sattele allegedly engaged in the conduct at issue in this case, we held, as discussed at Section III(A), *supra*, that a public employee states a First Amendment claim by alleging that his or her employer engaged in a "campaign of retaliatory harassment" in response to the employee's speech on a matter of public concern, even if the employee could not prove a causal connection between the retaliation and an adverse employment action. *Suppan*, 203 F.3d at 234–35. We then reiterated, in *Baldassare v. New Jersey*, 250 F.3d 188 (3d Cir. 2001), that "[a] public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Id.* at 194 (citing, *inter alia*, *Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987)). Jones contends that *Suppan* and *Baldassare*, taken together, were sufficient precedent to put Sattele on notice that his conduct—making harassing comments to Jones arising out of Jones's voicing of concerns about corruption in the pharmaceutical industry—was constitutionally prohibited.

In *Suppan*, however, we gave little guidance as to what the threshold of actionability is in retaliatory harassment cases. Instead, we merely held that such a claim existed. *Suppan*, 203 F.3d at 235. Moreover, the alleged conduct in *Suppan* spanned more than a year and involved the supposed lowering of ratings on employees' promotion evaluations and the admonishment of employees because of their union activities and support for a

15

particular mayoral candidate. *Id.* at 230–31. Based only on our acknowledgment of a retaliatory harassment cause of action in *Suppan* and the facts of that case, a reasonable official in Sattele's position would not have been aware that making a few comments over the course of a few months (the gist of which was asking an employee to focus on his job) might have run afoul of the First Amendment.

*Baldassare* also does not further Jones's argument that his First Amendment right to be free from retaliatory harassment was clearly established at the time of Sattele's alleged conduct. That case involved a straightforward retaliation claim brought under the First Amendment in which the plaintiff alleged a direct causal connection between his speech on a matter of public concern and his demotion, *see Baldassare*, 250 F.3d at 194 (plaintiff claimed he was demoted because of his statements regarding his investigation and report about conduct of his co-workers), not that he was subject to a campaign of retaliatory harassment such as the one involved in *Suppan* and alleged by Jones in this case. Thus, *Baldassare* would not have helped Sattele understand that his conduct might be constitutionally prohibited.[5]

_____

[5]Moreover, we note that even if *Baldassare* were relevant to determining whether Jones's right to be free from retaliatory harassment was clearly established at the time of Sattele's alleged conduct, that case would not necessarily put a reasonable official in Sattele's position on notice that making comments

such as Sattele's would violate the First Amendment. Under the traditional retaliation analysis articulated in *Baldassare*, the second inquiry, after the plaintiff has established that he or she was engaging in activity protected by the First Amendment, is whether the plaintiff's "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." 250 F.3d at 195. We have stated that, in determining the interest of the employer for purposes of this balancing test, "we must consider 'whether the [expression] impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Id.* at 198 (quoting *Rankin*, 483 U.S. at 388) (alteration in original). The District Court determined in this case that there was no evidence that OIG's interest in conducting an efficient investigation was impaired by Jones's speech. However, given our precedent on this issue, a reasonable official in Sattele's position could have *understood* his actions toward Jones as being justified because the need to maintain efficient working relationships and to improve Jones's performance of his duties on the Fiorello investigation outweighed his interest in speaking generally about potential corruption in the pharmaceutical industry, a matter outside the scope of the investigation OIG was conducting. *Cf. Sprague v. Fitzpatrick*, 546 F.2d 560, 565 (3d Cir. 1976) (holding that, even though speech leading to public employee's discharge "concerned matters of grave public import," the balance

17

We did touch on the retaliatory harassment theory again in our *Brennan* decision, noting once more that "a plaintiff may be able to establish liability under § 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation." 350 F.3d at 419 n.16. *Brennan* provided some additional guidance about what types of conduct would support such a claim, holding that some of the plaintiff's allegations (that he had been taken off the payroll for some time and given various suspensions as a result of his speech) would support a retaliation claim, whereas other of his allegations (including his claim that his supervisor stopped using his title to address him) would not because of their triviality. *Id.* at 419. However, *Brennan* was not decided until 2003, after Sattele's alleged conduct, which occurred in the fall of 2002, had already taken place. Thus, to the extent that *Brennan* added some specificity to the contours of the retaliatory harassment cause of action, an employee's First Amendment right to be free from such harassment was still not clearly established at the time of Sattele's conduct. *See Brosseau*, 125 S. Ct. at 600 n.4 (noting that the parties had pointed the Court to "a number of . . . cases . . . that postdate the conduct in question" and that

---

weighed against finding that speech protected by the First Amendment when it had "completely undermined" the effectiveness of the employer-employee relationship).

18

"[t]hese decisions, of course, could not have given fair notice to [the official] and are of no use in the clearly established inquiry").

Moreover, as discussed at Section III(A), *supra*, we also stated in *Brennan* that courts have not found violations of employees' First Amendment rights "where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." 350 F.3d at 419 (internal quotation marks omitted). *Brennan* therefore lends support to Sattele's argument that his critical comments to Jones did not violate Jones's First Amendment rights.

Accordingly, because of the dearth of precedent of sufficient specificity (and factual similarity to this case) regarding a public employee's First Amendment right to be free from retaliatory harassment by his or her employer at the time of Sattele's conduct, we cannot say that the constitutional right Jones alleged Sattele violated was clearly established. Sattele is therefore entitled to qualified immunity under the second, as well as the first, prong of our *Saucier* analysis.

## IV. Conclusion

The three comments made by Sattele in response to Jones's voicing of his concerns about potential corruption in the pharmaceutical industry, although critical of Jones's speech, were all intimately related to Jones's job performance and would

19

not have deterred a person of ordinary firmness from exercising his or her First Amendment rights.  As the District Court found, the comments were also unaccompanied by any change in Jones's employment benefits or wages.  We cannot conclude, based on this factual situation, that Jones alleged a deprivation of a constitutional right.

Moreover, even if there had been such a deprivation, Jones's constitutional right to be free from a campaign of retaliatory harassment was not clearly established at the time of Sattele's alleged conduct.  *Suppan* (and *Baldassare* to the extent it is applicable), although they were decided before the events at issue in this case, did not define the bounds of a retaliatory harassment cause of action with sufficient specificity, nor were their facts sufficiently similar to those alleged here, such that Sattele would have been on notice that his conduct was constitutionally prohibited.

Accordingly, Sattele is entitled to qualified immunity, and we reverse the contrary decision of the District Court and remand for further proceedings.